No. 68.—ISAAC DENNIS, sen'r, *et al.* plaintiffs in error, *vs.* G. J. GREEN, administrator of David M. Causey, deceased, defendant in error.

[1.] All the property of a defendant in judgment is bound alike by the judgment; and this, although some of the property be such as the defendant holds as member of a partnership which, itself, needs all of its property for the payment of its own debts.

In Equity, in Crawford Superior Court. Tried before Judge POWERS, March Term, 1856.

This was a bill filed by G. J. Green, adm'r of D. M. Causey, dec'd, against Isaac Dennis, sr. and Isaac Dennis, jr. The bill charges that D. M. Causey and one J. M. Dennis commenced business in Upson County in 1840, as partners, in the sale of dry goods; that the partnership lasted about two years, when it was discontinued; that J. M. Dennis had no

means of his own to contribute his share to the partnership capital, and Causey had to make large advances on account of said firm from his own private funds—the amount of which is not positively known, but an exhibit showing an advance of some $500 is attached; that J. M. Dennis died in debt to the firm and said Causey, and is still in debt to them to the amount of six or seven hundred dollars, and that suits are pending against the firm; among them, one in favor of Ray & Co. for $400 or $500, which will require an additional expenditure of Causey's private funds; that J. M. & R. Leavitt, among other creditors of said firm, held a note of some $320 against the same, which the said Causey & J. W. Dennis being unable to pay, agreed after the partnership ceased to renew, and which they did renew, signing the firm name to the note, and Isaac Dennis, senior, father of J. M. Dennis, signed also, agreeing at the time to become responsible for one half of said debt, as a donation to his said son, or in consideration of some indebtedness; that [after the death of J. M. Dennis, the said Isaac, senior, acknowledged his liability to pay one half of said note, and he was considered so liable by Causey up to the time when judgment was rendered thereon; that in February, 1846, separate judgments were obtained by the Levitts on said note against Causey as survivor of said firm, (J. M. Dennis having died,) and against Isaac Dennis, senior, as joint maker; that J. M. Dennis died in 1845, without paying his indebtedness to said firm or to said Causey; that he left property worth about $1.000, which went into the hands of I. Dennis, sr. and I. Dennis, jr. (the brother of J. M.) who took out letters of administration on his estate. The bill charges that the said administrators of J. M. Dennis agreed that said judgment should be paid out of the estate of the said J. M. and Causey was to give him credit for the amount so paid; that afterwards, Causey served them with a notice to pay a rateable proportion of the effects of said J. M. towards the satisfaction of said judgment and the *fi. fas.* issuing thereon; that subsequently, Isaac Dennis, junior, purchased said *fi. fas.* fraudulently for the purpose of enfor-

cing the same at some future day against Causey, and of releasing Isaac Dennis, senior, and the estate of J. M. Dennis from the payment of any part thereof; that said *fi. fas.* were paid off with the funds of said Isaac Dennis, senior, and of the estate of said J. M. Dennis, and not with the funds of Isaac Dennis, junior, who had just arrived at the age of 21 years, and had no means of his own; that as soon as the said *fi. fas.* were thus purchased, said administrators commenced administering said estate in a most fraudulent and illegal manner, paying an account of $150 to Isaac Dennis, senior, which was only a pretended account, and paying other large sums to accounts which they ought not to have paid, and in this way dissipating said estate, refusing to pay said Causey anything on said *fi. fas.* as they had agreed to do; that there are $500 worth of effects in the hands of said administrators still unappropriated, besides other property—such as a horse, cotton, &c. which they have converted to their own use; that there is a sufficient amount in their hands to satisfy said *fi. fas.* and no debts against said J. M. except said *fi. fa.* and the account of Causey, and the bill claims that it ought to be applied to the payment of said *fi. fas.* according to the original agreement. The bill charges that defendants held said *fi. fas.* three years before the death of Causey, and were often informed by him that he would resist its payment if endeavored to be collected out of him; that defendants well knew that the firm of Causey & Dennis was insolvent, and that J. M. Dennis was indebted to said firm and to said Causey; that they did not press said *fi. fas* during Causey's life, but the said Isaac Dennis, junior, caused the same to be levied on property of Causey immediately after his death, hoping to sell the same before any one could administer; and that said property is advertised and will be sold unless the proceedings are enjoined; charges that said *fi. fas.* are paid off in equity; that Isaac Dennis, junior, has admitted to complainant that there is one hundred dollars in his hands to go towards the payment of said *fi. fas.* &c.

The amendment to the bill charges that the note on which

Dennis *et al. vs.* Green, adm'r.

said *fi. fas.* are founded was a firm note; that the estate of J. M. Dennis, after paying its indebtedness to the firm of Causey & Dennis, or paying said *fi. fa.* will be solvent, leaving in the hands of the administrators some $500; that Causey, as surviving partner, collected out of the effects of said firm turned over by the said Isaac Dennis ———— dollars, which was paid out to partnership debts; that complainant has been compelled to litigate a claim of S. J. Ray & Co. against said firm; that he has paid out in defending it $100 for Counsel fees, and that his own services are worth ———— dollars; that said suit was decided in favor of said firm, and $500 or $600 thus saved; that Causey, at the time of his death, did not own more than $1.300 or $1.400 worth of property, whilst his debts amounted to $2.000; that complainant has paid out $300 in expenses of administration, besides other amounts on account of this and other litigation; that said Causey is hopelessly insolvent; that said Isaac Dennis, junior, knew all these facts, but with a view to defraud Causey's estate, and to prevent the Levitts from collecting the said judgment out of Isaac Dennis, senior, or the estate of J. M. Dennis, procured the transfer of said *fi. fas.*; that no attempt has ever been made by said transferee to collect said *fi. fas.* out of Isaac Dennis, senior, or to obtain judgment against the estate of J. M. Dennis, which he ought to have done in justice to the estate of Causey and his individual creditors, the said Isaac, senior, and the estate of J. M. Dennis being both solvent. Another amendment charges, that in 1842 or 1843, the books of the firm of Causey & Dennis were turned over to J. M. Dennis, and that he collected on book accounts $299, which he appropriated to his own use; that the litigation growing out of the claim of Ray & Co. has involved complainant in an expense of $500; that J. M. Dennis owed Causey & Dennis, by book account, $500 67, which he has failed to pay, and which his administrators ought to pay.

Prayer, that said judgment and *fi. fa.* may be perpetually enjoined, so far as the estate of Causey is concerned, and in

case the said *fi. fa.* is not paid off in equity, that the said Isaac Dennis, senior, account with Isaac Dennis, junior, for one half of said *fi. fa.* in pursuance of the agreement set up, and that the remainder of said *fi. fa.* be paid out of J. M. Dennis' estate, according to agreement, and the amount so applied be credited by Causey on his claim against said Dennis; and further, that all the agreements and equities between the parties be executed and settled.

The bill was sanctioned and defendants filed their answers. The answer of Isaac Dennis, senior, and Isaac Dennis, junior, denies that J. M. Dennis had no means when he went into partnership with Causey, but alleges that he contributed as much as Causey; denies that Causey made large advances for said firm, but states that if he made any, they were small; that defendants have frequently heard Causey admit that his and J. M. Dennis' indebtedness to the firm of Causey & Dennis was about the same, and that upon final settlement, neither partner would fall much, if any, in debt to the other or to said firm; denies that J. M. Dennis was indebted at his death to Causey, but states the belief, that if a settlement should take place, Causey would be the debtor, and this belief is strengthened by the fact that J. M. Dennis, during his last illness, sent for Causey to have a settlement and Causey refused to go, and J. M. Dennis then stated that Causey, upon a final settlement, would fall largely in his debt; states that J. M. Dennis died in 1845, and Causey, as survivor, took charge of the assets of the firm, consisting of notes and accounts and the books of said firm, which Causey admitted would, if collected, amount to one thousand dollars, and be sufficient to pay the claim of Ray & Co. and the debt due to the Leavitts, which were admitted by Causey to be the only debts due by said firm at the time J. M. Dennis died; states that defendants believe a considerable amount of said effects, as well as papers to the amount of $1.000 turned over to Causey, as survivor, by Isaac Dennis, senior, were collected by Causey or complainant; that if the papers in the hands of Causey were not sufficient to pay the firm debts, it is because

they were not collected or not applied to the payment of said debts; admits that the Leavitts held a note against the firm as charged, but denies that the note was renewed and given on the terms and conditions charged in the bill; Isaac Dennis, senior, expressly denies that he undertook to become responsible for one half of said note, either as a donation to his son or otherwise, and states that he signed as security, and for the accomodation of said firm, and upon the express and repeated promise of Causey that he should never have any part of said note to pay; that J. M. Dennis was not present when the note was given, and did not know that he (Isaac Dennis) had signed said note until several days aftewards; that he had no conversation with J. M. Dennis until after the note was given; he states that he has no recollection of ever having acknowledged that he was bound to pay said note or any portion of it as a donation to J. M. Dennis; and if he ever did make such acknowledgment, it was extorted by duress or fear, and does not bind him; he denies that he ever made such an admission.

The answer admits that judgments were recovered on said note as charged, and states that no such agreement as that stated was contended for or plead by Causey, in defence of the suit brought; admits that no final settlement had taken place between Causey and J. M. Dennis, when the latter died, but denies any indebtedness from Dennis to Causey, and says no claim has ever been filed by Causey with def'ts, as adm'rs of J. M. Dennis, and no suit commenced; admits that J. M. Dennis left about $1000 worth of property, but states that it has been sold and nearly all the money applied to the payment of the debts of J. M. Dennis; that they have paid out upwards of $300 to creditors, and have retained $520 to pay the guardian of H. E. Dennis, who was a ward of J. M. Dennis, and to whom he was indebted in that amount at the time of his death; that the expenses of administration are yet to be paid, and there are several contested claims against the estate, which are sufficient to absorb what came to the hands of defendants as administrators; it denies any mismanage-

ment of J. M. Dennis': estate, but says that the same has been fairly administered; admits that Isaac Dennis, jr. purchased of the Leavitts the *fi. fas.* against Causey as surviving partner; and Isaac Dennis, sr. and paid the principal and interest due thereon, but the said Isaac, jr. denies that he made said purchase for the fraudulent purposes charged in the bill, or that he purchased said *fi. fas.* with any one else's means than his own; states, that although he had just attained to the age of 21 years, he had been receiving wages as overseer for his father ever since he was 18 years old, and that he used his own money in the purchase of said *fi. fas.* and the money of no one else.

The answer states that the account of Isaac Dennis, sr. the payment of which by defendant is complained of in the bill, was for $121 74, and was regularly returned and proven before the Ordinary, and received by him as required by law; denies that there is $500 in the defendant's hands belonging to the estate of J. M. Dennis, or any other sum except what has been retained to meet the claims already mentioned; denies that J. M. Dennis died possessed of property which defendants, as administrators, have not returned to the Ordinary, or that they have converted any portion of his estate to their use; states that the horse referred to was the property of Isaac Dennis, and the cotton mentioned was sold and applied to the payment of J. M. Dennis' debts; denies that there are no other claims against J. M. Dennis, except said *fi. fas.* and the claim set up by Causey; denies that the effects of J. M. Dennis are liable to pay said *fi. fa.* or that the claim of Causey can be brought in as a set-off to said *fi. fa.*; states that if Causey ever had any claim, it is barred by lapse of time, and denies that defendants ever agreed to pay it; states that Isaac Dennis, jr. had no notice of any defence to said *fi. fas.* when he purchased them, and that he relied upon collecting the same out of Causey or Isaac Dennis, sr. both of whom were liable for their payment.

Isaac Dennis, jr. admits that he did not press said *fi. fa.* during Causey's lifetime, because Causey desired indulgence,

but denies that Causey ever notified him that he (Causey) would not pay the same, or that he would defend it; admits that Causey did at one time insist that Isaac Dennis, sr. was bound to pay one-half of said *fi. fa.* under the alleged agreement, and offered repeatedly to pay the other half; denies that the firm of Causey & Dennis was insolvent, but alleges that there were effects enough, if collected, to pay all their debts; denies that the *fi. fas.* purchased from Leavitts have been paid out of the effects of J. M. Dennis' estate. Isaac Dennis, jr. admits that he has caused Joel B. Morgan, the Deputy Sheriff, to levy said *fi. fa.* upon some property in Knoxville belonging to Causey, but denies that the attempt to collect said *fi. fa.* is fraudulent ; denies that said *fi. fa.* has been paid off in equity or otherwise, but insists that the same is valid and subsisting; denies that said levy was made for fraudulent purposes, or to take an improper advantage of Causey's estate ; Isaac Dennis, sr. denies that he had any thing to do with the purchase of said *fi. fas.* but admits that the debt is just and ought to be paid by Causey's estate.

The answer admits that defendants may have said, that if there was any balance in their hands as administrators, after paying the individual debts of J. M. Dennis, they might apply it towards the payment of said *fi. fa.* but denies that they were under any obligation to make said promise, or that if they did, they ever admitted that there would be a balance of more than $15 or $20 ; denies that there can be any larger balance, if any at all, in their hands, or that such matters can be plead by complainant as a defence to said *fi. fa.* without instituting a proceeding for the settlement of the affairs of said partnership of Causey & Dennis.

The answer of Isaac Dennis, jr. to amended bill, denies that the note upon which said *fi. fa.* is founded, was a firm note of Causey & Dennis, but admits that the firm name was signed by Causey after the firm was dissolved, and states that it was done without the authority or knowledge of J. M. Dennis, as defendant believes ; admits the litigation with Ray &

Co. the employment of Counsel and their payment, so far as defendant knows, of the amount of fees mentioned in the bill; admits that said suit was successfully defended; states that Causey admitted, in his lifetime, that if said suit should be decided in his favor, there would be assets enough in his hands, belonging to said firm, to pay said *fi. fa.*; states that defendant does not know the value of the estate left by Causey, but knows that a house and lot in Knoxville, belonging to said estate, sold for $580; does not know how much complainant has paid Counsel for services rendered: does not know what other expenses complainant will incur on account of the litigation mentioned in the bill, but denies that they can be brought in as a set-off to said *fi. fa.*; does not know what debts Causey owed, but insists that the *fi. fa.* takes precedence of them all; admits that Causey's estate is insolvent, but denies that Isaac Dennis, jr. knew of this fact and the other facts charged in the bill at the time he bought said *fi. fa.* or that he bought the same for the fraudulent purposes charged, or that there was any fraud in the transaction whatever; admits that defendant made no attempt to collect said *fi. fa.* out of Isaac Dennis, sr. for the reason that he was merely security, and defendant believed it was not equitable to force payment out of his estate whilst there was sufficient property of the principal to pay it; nor did defendant attempt to get judgment against the estate of J. M. Dennis, because, having judgment against the other parties, he believed the money could be made without it; and further, he did not believe the estate of J. M. Dennis ought to pay any portion of said debt, for reasons already set forth; admits that the estate of Isaac Dennis, sr. is solvent, but states that if the estate of J. M. Dennis has to pay any part of said *fi. fa.* it will be insolvent; denies that defendant was not actuated, in the purchase of said *fi. fa.* by the same considerations which usually control in a fair business transaction for profit; admits that he was administrator of J. M. Dennis when he bought said *fi. fa.* &c.

The answer admits that the books of Causey & Dennis be-

ing in the possession of J. M. Dennis at the time of his death, fell into the hands of defendant and remained in his possession a short time, but that he turned them over to Causey as already stated; denies all knowledge or belief that J. M. Dennis ever collected any amount due on said books.

JOEL B. MORGAN also filed an answer in which nothing material is stated, except the statement, that since the death of Causey, he has heard Isaac Dennis, jr. say, that there had been terms of settlement of said *fi. fa.* proposed, according to which, if the propositions on both sides were acceded to, said *fi. fa.* would be entitled to a credit of $100, and that the day on which Causey died was the day when it was to be ascertained whether the terms would be acceded to; but in consequence of Causey's death, no interview was had by the parties on the subject. This answer admits that Morgan, as Deputy Sheriff, has levied said *fi. fa.* on property of Causey worth $800 or $900.

The parties went to trial in the Court below on the bill and and answers, the *fi. fa.* by virtue of which the levy was made the transfer thereon, being also introduced in evidence.

The Court charged the Jury, that if they believed from the evidence that the note on which the execution was founded, was given for or in renewal of a co-partnership debt of Causey & Dennis, and that said Causey's separate or individual estate was not more than sufficient to pay his individual debts, that they should find for complainant, on the ground that Causey's individual estate or property in the hands of his administrator, was first liable for the payment of his individual debts; that they should look to the amendment to complainant's bill and the answer thereto, to ascertain if there were such individual debts and the amount thereof; that if the Jury believed from the evidence that the estate of J. M. Dennis, the other partner, was not more than sufficient to pay its individual debts, they might divide the payment of the execution between Causey's estate and the estate of J. M. Dennis—making each pay half of it.

The Jury found the following verdict: "We, the Jury, find for Isaac Dennis, jr."

Complainant moved for a new trial, on the grounds—

1st. Because the Jury found contrary to evidence and the charge of the Court.

2d. The Jury found contrary to evidence and the weight of evidence.

The Court sustained the motion and granted a new trial on the first ground taken, and defendants excepted, assigning as error the charge of the Court and the order granting a new trial.

GEO. R. HUNTER, for plaintiffs in error.

G. P. CULVERHOUSE; MILLER & HALL, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The motion for the new trial in this case, was put upon these grounds:

That the verdict was contrary to the evidence and to the charge of the Court, and to the weight of the evidence.

The Court below granted the motion and puts its decision on the ground that the verdict was contrary to the charge of the Court, thereby leaving room for the inference that it considered the other grounds untenable.

If this was the opinion of the Court in respect to those grounds, it is one with which we agree. The whole evidence consisted of the *fi. fas.* the transfers of the *fi. fas.* and the answer. The answer denied every equity giving allegation in the bill; and the *fi. fas.* and their transfers were not contradictory of any thing in the answer.

The whole question, then, whether the motion should have been granted or not, is reduced to this: was the charge of the Court right? for the facts of the case are such that the verdict is manifestly against the charge of the Court.

And we think that the charge of the Court was not right

It can hardly be said that the doctrine of the charge was the doctrine of the English Court of Chancery, at the time when the law of England was planted in Georgia. But whether that be so or not, we think that the doctrine is in conflict with law which the State has since made for itself. The words of the Judiciary Act of 1799 are as follows: "and all the property of the party against whom such verdict shall be entered, shall be bound from the signing of the first judgment."

The Act of 1810, "to point out a regular and definitive rule for the priority of judgments," declares that "all the property belonging to the defendant or defendants, shall be bound and subject to the discharge of the first judgment." (*Cobb's Dig.* 494, 495.)

If *all* of the defendant's property is bound, that which he holds as partner, must be bound as much as that which he holds otherwise than as partner. The words have that extent of meaning, and there is nothing in any Statute to restrict them. On the contrary, there are other Statutes which countenance this large import of the words, as the Statute of 1818, "pointing out the mode of collecting a certain description of debts therein mentioned," and that of 1820, "to regulate the mode of prosecuting actions against contractors and co-partners, in certain cases." (*Cobb's Dig.* 483, 484.)

We think, therefore, that all of the property of a defendant in judgment, is equally bound by the judgment; and this, although some of the property may be such as he holds as member of a partnership which, itself, needs all of its property for the payment of its own debts.

If we are right in this, the charge of the Court was wrong; and if that was wrong, the verdict's being contrary to it, was no objection to the verdict.

We are constrained, therefore, to reverse the judgment granting the new trial.