Toombs vs. Hill.

TOOMBS *vs.* HILL.

28  371
102  358

The assets of a partnership were not sufficient to pay the debts against the partnership ; the separate assets of one of the partners, a deceased person, were not sufficient to pay his separate debts.

*Held,* that the partnership debts had the right to be first paid of the partnership assets, and the separate debts the right to be first paid out of the separate assets.

Exception to award of arbitrators—in Wilkes Superior Court. Decided by Judge Thomas, —— Term, 1859.

The facts of this case are sufficiently stated in the following opinion pronounced by the Court.

WM. M. REESE & BARNETT, for plaintiff in error.

T. R. R. COBB, *contra.*

*By the Court.*—BENNING, J., delivering the opinion.

Henry J. Pope and Allen W. Hill were members of a partnership, under the name of H. J. Pope & Co. The assets of that partnership, at its close, amounted to "more than $45,000." The debts of the partnership exceeded the amount of the assets. As many of the debts as the assets would pay were paid out of the assets by Mr. Hill; the rest of the debts he paid out of his individual property.

Mr. Pope died, and Mr. Toombs became his administrator. His separate estate, in the hands of Mr. Toombs, amounted to $102,266 68. There were debts against Pope, individually, amounting to $66,691 54, which were "entitled to be paid in full" out of these assets. The residue of these assets left, after paying these debts, for the payment of the other separate debts, would consequently be $35,575 14. These other debts amounted to $93,571 88. This residue, therefore, was not sufficient to pay them.

Hill insisted that the debts against H. J. Pope & Co., which he had taken up with his separate funds, ought to be paid to him out of the residue aforesaid of the separate funds of H. J. Pope, *pro rata*, with the said $93,571 88 of separate debts against Pope. This claim the administrator of Pope opposed.

The claim, with some other matters, was referred to "auditors," who reported "that copartnership debts of H. J. Pope & Co., paid by Allen W. Hill," entitled "him to share *pro rata* in the individual assets of H. J. Pope." They also reported on the other matters referred to them.

The Court approved their report, and that approval was excepted to by the administrator of Pope. The exception was, in this Court, confined to the part of the report aforesaid, which gives to Hill, a creditor of H. J. Pope & Co., the right to share with the separate creditors of Pope in the separate assets of Pope. And the decision of this Court will not go beyond the argument.

The question, therefore, will be this: Did the debts against H. J. Pope & Co., held by Hill, have the right to share, *pro rata*, with the debts against H. J. Pope, held by other persons, in the separate assets of H. J. Pope, in the hands of his administrator? Let it be borne in mind, that none of the debts of either class were in judgment at the time of Pope's death, and, consequently, that what is the effect of the statutes regulating judgment liens, is not in the case.

In Story's Equity Jurisprudence, (§ 676,) the following propositions are asserted: "The creditors of the partnership have a preference to have their debts paid out of the partnership funds, before the private creditors of either of partners. But this preference is, at law, generally disregarded; in equity, it is worked out through the equity of the partners over the whole funds. On the other hand, the separate creditors of each partner are entitled to be first paid out of the separate effects of their debtor, before the partnership creditors can claim anything."

These propositions are, we think, established as generally true, by the authorities cited in their support, and by other authorities.—See 1 Amer. Lead. Cases, 319. The case in which there are no joint effects, and the case in which there is no solvent partner, are, it seems, exceptions; in them the creditors of the partnership being allowed to share in the separate effects of the partner equally with his separate creditors. In the present case, there were both joint effects and a solvent partner. Consequently, if it be true that these are excepted cases, yet

it can make no difference in this case, as this case does not fall among them.

Has the doctrine of the common law, taught by these propositions, been changed by any of our own State legislation?

The Judiciary act of 1799, and the acts amendatory of it, make all the property of a defendant in judgment "bound from the signing of the first judgment." Pr. Dig. 426 435. In Cleghorn vs. The Insurance Bank of Columbus, (9 Ga. 319,) this Court, in view, probably, of these acts, decided that a judgment against the partnership, older than a judgment against the partner, had over the latter a preference, even in the separate property of the partner.

A judgment against a partnership is also a judgment against each partner; and if a judgment against a man binds all of his property, it would seem to follow, of necessity, that a judgment against the partnership must bind the separate property of each partner equally with this partnership property. And so, too, it would, for the same reason, seem to follow that a separate judgment against a partner must bind his partnership property equally with his separate property. In respect to this last case, however, it must ever be kept in mind, that what is this partnership property of the partner is no more than his interest in the *surplus effects* of the partnership, that remain after all the debts of the partnership have been discharged, the partners having the legal title to all of the partnership effects, and the right to have those effects applied to the payment of the partnership debts, before a partner can touch any part of them. The effect of this is, it is true, to make the separate creditors of a partner compete, on very unequal terms, with the creditors of the partnership. But this is an evil for which it seems difficult even to devise a remedy, without destroying this right in the partners; for, if we say let the

creditors of the partnership stand back from the effects of the separate partner, until his separate creditors have taken of those effects a share equal to the share of the partnership effects taken by the partnership creditors, yet in many cases, this, our rule, will not produce the desired equalization, and, in the rest, it will do so only at a ruinous cost. In many cases—in, I think, quite a majority of of the cases—the part of a partner's property which he has in the partnership, will bear to the partnership debts a larger proportion than that which the part he has out of the partnership will bear to his separate debts. Usually, a merchant has nearly all of his means in his partnership, and yet he will, in various ways, be incurring separate debts. In these cases, we wholly fail to produce the desired equalization of the two sets of creditors. In the remaining cases we may, perhaps, accomplish the object, but if we do so we shall have to do it through the instrumentality of a bill in equity, with all its incidents and risks of lawyers, receivers, deaths of parties, losses by accident, consuming delay; and these are so devouring that the part of the fund left for proportionate division among all the creditors, will generally be so small that the dividend to those creditors most benefitted by the rule will be no greater than what their dividend would have been by the old rule—the rule which lends creditors of the partnership, first on the partnership effects, and creditors of the separate partner, first on his separate effects.

However, the decision in Cleghorn vs. The Insurance Bank, was in a case in which the older judgment was against *the partnership;* and the decision was, that the judgment had the right to be paid out of the separate property of a partner, in preference to a younger separate judgment against that partner.

This decision was followed in Baker, Wilcox & Co. vs. Wempe, et. al., (19 Ga., 87,) and in Dennis, et. al., vs.

Green, adm'r, (20 Ga., 386).   As to this last case, although the *judgment* in it sustains me in what I have said, yet the *opinion* misconceives the facts of it, and is calculated to mislead.   The judgment was, that the court's charge was wrong, and the charge was, that if the separate estate of Causey was not more than sufficient to pay the separate debts, that estate was not liable to the judgment against him, as survivor, founded on the debt due from the partnership.

As to the present case, none of the debts are in judgment.   Therefore, so far as the present case is concerned, it cannot be that the acts under notice have affected the common law doctrine.

Another act is, the act of 1792, "to protect the estates of orphans," &c., so far as it prescribes the order in which the debts "due by any testator or intestate shall be paid by executors and administrators."   This act declares that such debts "shall be paid" "in the order following, viz: funeral and other expenses of the last sickness, charges of probate of will, or of the letters of administration; next debts due to the public; next judgments, mortgages and executions—the oldest first; next rent; then bonds or other obligations; and lastly, debts due on open accounts; but no preference whatever shall be given to creditors in equal degree, where there is deficiency in assets, except in cases of judgments, mortgages that shall be recorded, from the time of recording, and executions lodged in the sheriff's office; the eldest of which shall be first paid; or in those cases in which a creditor "may have a lien on any part of the estate."—Pr. Dig., 228.   The last case here excepted, is that in which a creditor "may have a lien on any part of the estate."   The right which, by the common law doctrine, the partnership creditors have, to be preferred as to the partnership effects, and which the separate creditors of the partners have, to be preferred as to his separate effects, is a right which, with-

out much violence to language, may be called an equitable *lien*. Consequently, this act of 1792, instead of repealing the common law doctrine, requires that doctrine to be observed. It requires executors and administrators, in the order of their payments, to respect existing liens.

This act, then, does not, as we think, change the common-law doctrine. And this court has so decided, in one if not the two cases; in the case of Thornton vs. the administrator of Wooldridge, if not also in the case of Semmes vs. Boykin, et al. These two cases were decided at Macon, in January, 1859.

We cannot recall any statute which we think ought to be regarded as changing the common law doctrine. It must follow, therefore, that, in our opinion, that doctrine is in force, so far as the present case is concerned—a case in which none of the debts are in judgment, and in which the partner having died, his assets are to be administered according to a statute that requires liens to be respected in the administration of assets.

Consequently, we must reverse the judgment of the court below. The effect of the reversal of that judgment will be to open the whole case, and to give the court below an opportunity of applying the principle of this decision, to every part of the case to which it is adapted.

Judgment reversed.