INHABITANTS OF WEST BRIDGEWATER *vs.* INHABITANTS OF WAREHAM.

Plymouth.    Oct. 22, 1884. — Jan. 9, 1885.    C. ALLEN & COLBURN, JJ., absent.

A town may, by its vote, admit that a person had a settlement therein.

The records of a town showed votes "to hire out F. and take his wages for to support his family," and "to vendue the poor," followed by the record of the bidding off of F.'s children; and to pay various bills for the support of him and them; a vote, at a meeting held under a warrant "to see what the town will do with the town poor," that "the children of F. be sold to the lowest bidder," and that whatever it should cost to get them kept until they were twenty-one should be paid in one year; and also that "the rest of the town's poor that are not provided for be left to the care of the selectmen." *Held,* that these votes contained admissions that F. had his settlement in the town, and warranted a finding of such settlement.

CONTRACT for expenses incurred in the support of George M. Fryes, a pauper, whose settlement was alleged to be in the defendant town.    The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, the material parts of which appear in the opinion.

*H. J. Fuller,* for the plaintiff.

*E. B. Powers,* ( *S. L. Powers* with him,) for the defendant.

HOLMES, J.    The question whether the pauper George M. Fryes was settled in the defendant town, depends on whether his grandfather, James Fryes, senior, was settled there.    The plaintiff says that certain ancient votes of the defendant amount to admissions which warranted a finding in its favor.    The defendant denies that it either did or could make admissions that would have that effect.

Taking the latter contention first, the defendant says that, as the statute provides that settlements shall be gained in certain

ways and not otherwise, and also in view of the limited power
of towns, proof of admissions of the conclusion of law that a
pauper had a settlement cannot take the place of proof of the
facts that warrant that conclusion.

We are unable to assent to this argument.   In the first place,
such admissions are not mere statements of law.   They might
be, if they set forth the constituent facts relied on as establish-
ing the conclusion.   But when the conclusion alone is stated,
the statement affirms or admits by necessary implication that
facts exist which warrant that conclusion.   Again, to establish
a settlement against a defendant in this way is no more intro-
ducing a new mode of gaining a settlement, than to establish a
marriage by admissions in a suit against a husband for necessa-
ries furnished his wife is introducing a new mode of marriage.
The admission is not conclusive, and, if it does not induce the
inference of the facts prescribed by statute as necessary to con-
stitute a settlement or a marriage, it goes for nothing.   Finally,
we see no more reason to doubt the power of towns to make
admissions in town meeting prejudicial to their own interests,
in a case where they have power to act on the general subject
matter, than to doubt their power of doing the same thing
through their counsel in court; especially on a question which
they have statutory power to settle, as the defendant could have
done in this case, by town vote admitting the pauper as an in-
habitant.   The case of *New Bedford* v. *Taunton*, 9 Allen, 207,
cited by the defendant, only denies the power of overseers of
the town to bind the town; it does not suggest that an ad-
mission of the town itself would not be evidence against it,
and pretty strongly implies the contrary.   See *East Greenwich*
v. *Warwick*, 4 R. I. 138; *Hopkinton* v. *Springfield*, 12 N. H.
328, 330.

The votes put in warranted the inference that was drawn
from them.   In 1824, at a town meeting held under a warrant
"to see what the town will do with the town poor," it was
"Voted the children of James Fryes be sold to the lowest bid-
der," &c., and that whatever it should cost to get them kept
until they were twenty-one should be paid in one year.   The
record then continues, "Voted the rest of the town's poor that
are not provided for be left to the care of the selectmen to

dispose of." The foregoing language clearly means that the children of James Fryes are a part of the town poor. "The town's poor," in its natural sense and unexplained, means poor whom the town is permanently bound to support. St. 1793, *c.* 59, § 1. It does not include persons receiving temporary relief under the St. of 1793, *c.* 59, §§ 9, 13. Coupling this with votes of previous years, "to hire out James Fryes and take his wages for to support his family," "to vendue the poor," followed by the record of the bidding off of James Fryes's children, and to pay various bills for the support of him and them, we find ample admissions that James Fryes had his settlement in the defendant town. The force of these admissions is not affected by the question whether the town was usurping the functions of the overseers of the poor by passing the votes, upon which we express no opinion. For, as the town had power to act on the general subject matter, an admission with regard to it is evidence against the town, even if the particular act directed to be done was *ultra vires.*                    *Judgment for the plaintiff.*