## MERRILL v. INHABITANTS OF TOWN OF GRAY.

### No. 1351.

District Court, D. Maine.

Jan. 29, 1941.

Arthur D. Welch, of Portland, Me., for plaintiff.

Frank H. Haskell, of Portland, Me., for defendants.

PETERS, District Judge.

This is an action by the receiver of a national bank to recover a stock assessment. The defense is (1) that the defendant town had no power to own the stock and that, its purported ownership being void, the assessment was void, and (2) that the town held money under a bequest as trustee and used a part of the funds to acquire the stock in question as an investment for the trust, which investment in the stock was illegal, both under the terms of the will by which it acquired the money and under the laws of Maine.

The case was heard by the court without a jury. I find the facts to be as follows:

The plaintiff in November, 1933, was duly appointed receiver of the First National Bank of Portland, Maine, upon the stock-holders of which bank a 100% assessment was duly made by the Comptroller of the Currency on February 26, 1934. On that date, and in fact, since January 13, 1905, the defendant, a municipal corporation in Maine, "erected into a town by the name of Gray" by the General Court of Massachusetts on June 4, 1779, appeared on the books of the bank as the owner of 26 shares of its stock. The certificate was issued in the name of "the Inhabitants of Gray (Me.)". In smaller handwriting above the name of the stockholder in the certificate appear the words "M. P. Frank, their attorney".

The town received its share of the dividends paid to all the stockholders of the bank from 1905 to 1933, inclusive, aggregating $5,187.

By the will of one Henry Pennell, admitted to probate in July, 1884, the town of Gray was given a lot of land with a building thereon which Mr. Pennell had erected in the town of Gray to be used for a school building, it being specified that the devise was to be used forever by the inhabitants of said town for whatever should promote the cause of learning, education and good morals. By the same will the sum of $30,000 was given the town, "to be held by said town in trust * * * and for the following purposes, viz: said fund of $30,000 is to be converted into money * * * and then the same is to be funded and invested in state, city or town bonds or obligations of the New England states or any first class mortgages upon productive unincumbered real estate in Maine in value not less than double the amount loaned thereon exclusive of buildings upon the property. Said investments are to be made by the Selectmen of said Town of Gray unless they shall be satisfied with the investments which shall come into the hands of my Executor and said Selectmen are authorized to receive from my Executor and he is authorized to deliver to said Selectmen said investments at a fair appraisal instead of converting the same into cash if mutually agreed upon by my Executor and by said Selectmen and said fund and nature of said investments shall be entered upon the books of said town and be known as the 'Pennell Fund for educational purposes in the town of Gray'. As these investments mature and fall due other safe and perfectly sure investments shall be made by the Selectmen

of said Town of Gray, and entered upon the books of said town known and designated as above." ○

The selectmen were authorized to withdraw from the fund $5,000 for the purchase of books, instruments, laboratory tools, etc., to be used in connection with the school which the donor had established in the building above described. The income of $25,000 was to be used for the payment of salaries of teachers and purchase of fuel for the school. Provision was made for the disposition of the property in case the town refused to accept it, but the town did duly accept the bequests under the will and received the money, investing a part of it in the stock in question. The money received from Mr. Pennell and the proceeds of it were kept separate and called the "Pennell fund" or the "Pennell Institute fund". The securities were kept by Mr. Frank as the attorney for the town for many years. Mr. Frank was instrumental in procuring the bequest for the town. According to some original checks which have been found, dividend checks were made payable to "Inhabitants of Gray", and in one or two instances "Inhabitants of Gray, M. P. Frank, atty." They were endorsed "Inhabitants of Gray, by M. P. Frank, its atty". during the first years of the transaction, and later by other gentlemen who either endorsed as attorney or as treasurer of the town or as treasurer with the words "Pennell fund" following their name and title.

█ It is true that if the town of Gray was not permitted under the laws of Maine to hold or own stock in a national bank, the assessment by the Comptroller of the double liability would be a nullity and the plaintiff could not recover. It is also true that if not originally permitted to own the stock, the town could not ratify its acquisition nor take any action which by estoppel or otherwise would make it liable as an owner.

The case of one national bank holding stock in another furnishes a perfect analogy. Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007, and cases cited.

The defendant rests its contention that the purchase of this stock by the town was ultra vires and therefore void, upon the general proposition that the only powers a municipal corporation has or can exercise are those granted in express terms, those fairly implied or understood to be granted, and those essential to the declared objects of the municipality,—not merely convenient but indispensable.

Defendant's counsel in his brief quotes from Lovejoy v. Inhabitants of Foxcroft, 91 Me. 367, 40 A. 141, 142, in which the court said: "Towns in Maine, as in the other New England states, are territorial divisions into which the territory of the state is divided by the legislature for political purposes, for the more convenient and effectual administration of certain functions of political government. The inhabitants of the particular territory are made a political agency, and particular duties and liabilities for purposes of administration are imposed upon them even without their consent. They are not a voluntary association. They cannot escape the duties and burdens imposed, except by a removal of themselves and their property from the town territory. It is clear that such agencies are subject to such duties and liabilities only as are expressly or by necessary implication imposed upon them by the legislature to effectuate the purpose of their creation. The powers of a town over the inhabitants and property within its territory are correspondingly limited to such as are necessary for the efficient discharge of those duties and liabilities."

In the case quoted from the court was speaking of the limitations upon the borrowing of money by a town officer, especially the constitutional provisions of debt limit and the purpose for which the money was to be used.

█ The argument of counsel ignores the fact that Maine towns have a dual capacity. The Maine Statutes in Chapter 1, Section 1, provide that the towns are political divisions of the State, but by Chapter 5, Section 1, the towns are made corporations, "the inhabitants of each town are a body corporate, capable of suing and being sued, and of appointing attorneys and agents." Also by other sections of the Statute now Chapter 5, Sections 90 and 91, towns are expressly authorized to accept gifts upon conditions made by a testator or an individual,—where they are for educational, benevolent or charitable purposes,—and having accepted such gifts the town is authorized to carry into effect the requirements and terms upon which they were accepted.

The distinction between the two capacities in which a town in Maine may act is discussed with great learning in the case of Libby v. Portland, 105 Me. 370, 74 A. 805, 806, 26 L.R.A.,N.S., 141, 18 Ann.Cas. 547. The following is quoted from the opinion: "In the absence of any special rights conferred or liabilities imposed by legislative charter, towns and cities act in a dual capacity, the one corporate, the other governmental. To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts, and the right to sue and be sued; to the latter belong the discharge of duties imposed upon them by the Legislature for the public benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes. This distinction is sharply defined in a long line of decisions of which it is necessary to cite only the following: Eastman v. Meredith, 36 N.H. 284, 72 Am.Dec. 302; Oliver v. Worcester, 102 Mass. 489, 3 Am.Rep. 485; Small v. [Inhabitants of] Danville, 51 Me. 359; Bryant v. [Inhabitants of] Westbrook, 86 Me. 450, 29 A. 1109. The Revised Statutes recognize this twofold character; chapter 4, § 1, making the inhabitants of each town a body corporate, and chapter 1, § 1, making towns a subdivision of the state."

The case of Moulton v. Inhabitants of Scarborough, 71 Me. 267, 36 Am.Rep. 308, referred to in the above opinion, involves the somewhat unusual case of a suit brought against a town for negligence in the management of a ram which the town owned. The defendant made the point (similar to the one made here) that: "A town cannot own property, except when necessary to aid in the performance of duties imposed on it by law. For a town to be 'the owner and possessor of a ram,' otherwise than in the line of its statutory duties, is ultra vires". The court held however that the town in its corporate capacity had the right to own and keep the ram and was liable for malfeasance on its part.

A town in Maine in its corporate capacity is liable in a suit brought to recover damages for libel. Stanley v. Inhabitants of Sangerville, 119 Me. 26, 109 A. 189, 9 A. L.R. 348.

There has come to my attention no provision of law in Maine which prohibits the ownership of bank stock by towns in their capacity as corporations, and, without some such restriction, it is clear from the Maine decisions that a town can hold stock as well as other real and personal property.

The investment by the town, through its trusted agents, in the stock in question, while contrary to the injunction laid upon the town accompanying the gift of the money, was not contrary to any law of Maine and was within the corporate power of the town.

The point that the assessment of the statutory liability, which was an inseparable part of the stock ownership, was void because the ownership was void, must be overruled.

It is also clear that, so far as this assessment is concerned, it is unimportant that the town held the stock in a trust capacity or that its purchase violated the terms of the trust. The stock stood at the time of the assessment, and for 29 years prior thereto, in the name of "the Inhabitants of the Town of Gray", and under the federal laws the inhabitants, of the town of Gray in their corporate capacity are liable for the assessment. Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L.R.A. 119, 63 Am.St.Rep. 493; Davis v. First Baptist Society, Fed.Cas.No.3,633, 44 Conn. 582; Pullman v. Upton, 96 U.S. 328, 24 L.Ed. 818; Gamble v. Cumberland College, D.C., 4 F.Supp. 767; Hiatt v. Peddy, 5 Cir., 73 F.2d 235.

Judgment must be rendered for the plaintiff for the amount of the assessment, $2,600, together with interest from April 5, 1934, the date of the assessment.