(Decided June 22d, 1897).

---

HENRY H. KERR, RECEIVER OF THE CITY NAT. BANK OF QUANNAH, TEXAS, *vs.* JOHN D. URIE.

*Married Women—Shares of Stock in National Banks—Personal Lia-bility of Stockholder—Assignment of Shares.*

A married woman residing in this State is capable of holding shares of stock in a national bank located in another State, and is subject as such stockholder to the personal liability imposed by the National Banking laws, without regard to the question whether under the laws of the State where the bank is located a married woman may become the owner of shares of stock.

A person who holds shares of stock in a national bank as a self-appointed attorney or trustee for an infant, or for an undisclosed prin-

cipal, is subject to the liability imposed upon owners of such stock by sec. 5152 Rev. Statutes of the U. S.

A party to whom shares of stock in a corporation are assigned is the equitable and real owner of the same, without a transfer on the books of the corporation.

The general rule is that when a person appears on the books of a corporation to be the absolute owner of shares of stock, he will not be allowed to relieve himself from personal liability as a stockholder by showing that he held the stock in a representative capacity.

Appeal from a judgment of the Circuit Court for Kent County (WICKES and STUMP JJ. )

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*James A. Pearce,* for the appellant.

*Charles F. Harley* (with whom was *John D. Urie* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The question presented by this appeal is whether a married woman residing in this State is capable of holding stock in a national bank located and doing business in the State of Texas, and if so, whether she is liable as such stockholder under the personal liability provisions of section 5152 of the Revised Statutes of the United States.

Whatever difficulty may surround this question arises, we think, more from the manner in which it is presented in this case than from any other cause, for it can hardly be supposed that at this day when, by the law of most all the States a married woman may contract as a *feme sole* in respect to her separate estate, she is without power to subscribe for or become the transferee of the stock of a national bank. The learned author of *Cook on Stockholders and Stock* expresses the opinion that without doubt a married woman may become the transferee of such stock—sec. 250. Certainly a *feme sole* may be such a stockholder and would undoubtedly be subject to all the personal liabilities imposed

by section 5152.   And if this be so what would be the
effect of her marriage upon her right to hold bank stock?
Would she be any the less a stockholder after than before
her marriage?   There is certainly nothing in the Acts of Con-
gress which can be held to exclude married women from
the privilege of owning this class of valuable personal
property.

The question before us is thus presented.   It appears
from the agreed statement of facts that in April, 1891, the
defendant, John D. Urie, purchased for the benefit of his
infant daughter, a child four years old, ten shares of the
capital stock of·" The City National Bank of Quannah,"
and that his wife requested that the certificate therefor
should be placed in her name, which was accordingly done.
The bank having called upon Mrs. Urie to pay into its sur-
plus two hundred and fifty dollars, she was unable to do so,
and the defendant, her husband, agreed to and did furnish
the money the bank had called for, provided the stock in
question would be transferred to him to be held for the
benefit of their infant child, as Mrs. Urie had held it in the
first instance.   The original certificate which had been
issued to her, was accordingly surrendered, and another
was issued to the defendant in February, 1892, which he
subsequently transferred to her at her request and in con-
sideration of one hundred and twenty-three dollars and ten
cents paid to him by her.   It is admitted that this transfer
is *bona fide* and for value.   The assignment by the defen-
dant was to his wife as attorney, and the certificate was so
drawn, but it appears by the agreed statement of facts that
the stock was issued to and held by Mrs. Urie personally,
as shown by the stub of the stock book.   The bank having
become insolvent a receiver was duly appointed, who has
instituted suits against the stockholders of said bank to en-
force the personal liability provided by section 5152.   But
instead of suing Mrs. Urie, who according to the books of
the bank is the holder of the stock, suit has been brought
against her husband, upon the theory that his transfer of

the stock to her is void, not, however, by reason of any fraud, or irregularity in the transfer, but upon the sole ground that Mrs. Urie, being a married woman, is incapable of being a stockholder. Such a proposition at first blush would seem to be altogether untenable, nor do we think this first impression has been overcome by any argument we have heard. It is too late at this day to regulate the property rights of married women by the ancient common law of England. That has been abrogated in this country almost universally, and as Mr. Cook says, married women may doubtless in all the States become transferees of bank stock (*supra*), and the learned counsel for the appellant is forced to admit that if the law as thus laid down is to prevail, his proposition must fail.

If the question before us had arisen out of a contract conceded to be a Maryland contract, we think there could not have been any doubt as to the legality of Mrs. Urie's holding, for under our statute all the property, real and personal, belonging to a woman at the time of her marriage and all property which she may acquire by purchase, gift, grant, devise, bequest, descent, or in course of distribution, she shall hold for her seperate use, &c. There can be no doubt, therefore, that a married woman who is in possession of bank stock before she is married, or which after marriage came to her as provided by the statute, she would hold it as her separate property as provided by the Code. The fact that her power of disposition may be limited makes her none the less a stockholder. But it is said the contract is not a Maryland contract, but is a contract made in Texas, and that therefore the rights of the parties must be determined by the law of the latter State. And this contention is based upon the proposition that a subscription made in one State to capital stock of a corporation which exists in and carries on its business in another State, is a contract to be performed in the latter State and is governed by the laws of that State. While this general proposition may be conceded, yet it must be remembered that the contract we are

considering is not the contract of subscription, but the contract by which the defendant transferred to his wife the stock already subscribed for *by her*. It would seem to follow if the contention of the appellant be correct, namely, that Mrs. Urie has no legal capacity to subscribe for or hold the stock, that the original contract of subscription which was made by her and *in her own name*, although the money was furnished by her husband, was null and void; and therefore no liability ever arose under sec. 5152, and hence the defendant never incurred any liability thereunder, unless the mere fact that he furnished the money to pay for the stock would make him so liable—and this cannot be, because the liability under section 5152 attaches only to persons who are stockholders either in their own right or in some representative capacity not exempted by the express terms of that section. But be this as it may, we have already said the question now before us is the validity of transfer of the stock by the defendant to his wife. By means of this contract of transfer, which was made in this State by two citizens of this State, and therefore to be governed by the laws of this State, the defendant in good faith and for value assigned, and we think had a right, no creditor of his objecting, to thus assign it. The contract was complete when the transfer was made, and his ownership of the stock, which is conceded, carried with it, according to the weight of authority of the later decisions, the right to make the transfer, because stock is characterized by the same features as other forms of personal property. Nor was it essential to the transferee's equitable title that she should have a new certificate issued to her. It was said by DAVIS, J., in the leading case of *The N. Y. R. R. Co.* v. *Schuyler*, 34 N. Y. 81, "That the non-production and surrender of the certificate at the time of transfer is not fatal to the title of the transferee. It is only essential to the safety of the corporation." And in *Baltimore City Passenger R. W. Co.* v. *Sewell*, 35 Md. 238, it is said that when shares are assigned, although not made on the books of the cor-

poration, title passes to the assignee. In later cases (*Balto. Retort and Fire Brick Co.* v. *Mali*, 65 Md. 96-97 ; *Swift* v. *Smith*, 65 Md. 435, and *Noble* v. *Turner*, 69 Md. 524), it was held that such a title is an equitable title, giving to the transferee the right to enforce actual entry of the transfer upon the books of the corporation and thus to convert the equitable into a legal title. We conclude, therefore, that by virtue of the transfer in Maryland, and without regard to the laws of Texas, Mrs. Urie became the equitable and real holder of the stock in question, and if this be so, no question as to her powers of disposition, or as to whether she is or is not capable under the laws of Texas to make contracts can arise in this case, for the liability of a stockholder arises not under any law of Texas, which it is contended has not been proven in this case, but under the Act of Congress. And the contracts which it is claimed she is liable on are not her contracts, but the contracts of the bank. *Witters* v. *Sowles*, 35 Fed. Rep. 641; *Section* 5152, *U. S. Rev. Stat.* The right to be a stockholder is given to her by the law of the State where she resides and her rights and liabilities as such are provided by the Acts of Congress. But if we could, without proof, say what is the law of Texas, it will be found upon this question the same substantially as ours, "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent * * * shall be the separate property of the wife." *Rev. Statutes of Texas*, sec. 2967.

The case of *Keyser* v. *Hitz*, 133 U. S. 151, was relied on by the defendant to show that his wife and not he, was the real holder of the stock in question, and that therefore she was the proper defendant in this suit. Assuming that she had a right to hold the stock under our State law, this case is, we think, conclusive authority upon the controlling question before us. In delivering the opinion of the Court HARLAN, J., said : " The only persons holding shares national bank stock whom the statute exempts from personal

responsibility, are executors, administrators, guardians and trustees. See 5152. It is not for the Courts by mere construction to recognize exemptions which Congress has not made. The hardship that may result where the ownership of national bank stock by a married woman is subject to the common law rights of her husband in respect to alienation, cannot control the interpretation of the statute. Such considerations are more properly for the legislative department." In the matter of the *Reciprocity Bank*, 22 N. Y. 15, COMSTOCK, J. expressed the same view and said that the law in regard to the imposition of personal liability of stockholders ought to be so construed as to maintain it in its integrity, and that to hold married women exempt from its provisions would go far to defeat its policy.

The appellant, however, contended that admitting that Mrs. Urie was authorized to hold the stock beneficially she did not so hold it, but in fact held it as attorney, agent, trustee or in some representative capacity. But it is clear from the evidence that she either holds as self-appointed attorney or trustee for an infant of tender years; for an undisclosed principal as appears by the certificate, or personally and beneficially, as appears by the stub of the stock-book of the bank. In neither event do we think she can evade the personal liability of a stockholder. If persons were allowed to subscribe for stock in a national bank or in any other corporation where a personal liability attaches either as attorney for an unnamed principal, as self-appointed trustee for some unnamed *cestui que trust* or as attorney for an unnamed infant of tender years, and when called upon to pay the debts of the bank to the extent of the stock so subscribed, could escape by simply declaring that they represented in some capacity those who are legally or otherwise incapacitated, the law would be a dead letter, and the creditors of these associations which are found in great numbers in every State would be deprived of the only certain means provided by law for the payment of their claims. But in addition to this it is well settled upon authority that one assuming to act as

Mrs. Urie has acted becomes personally bound. The infant not being liable, liability attaches to the person who makes the subscription, and if that person has transferred the stock to one capable of taking and holding it, the liability passes to the latter. *Cook on Stock and Stockholders*, sec. 67. The only safe rule on this subject is that when stock is held in a representative capacity it should be noted in the stock-book of the bank, and if a person appears there as absolute owner of the stock, he will not generally be permitted to deny it. If he claims to be trustee and does not disclose it, he is guilty of *laches*, for which others should not suffer. " The settlement of the affairs of an insolvent bank would be rendered a matter of great expense and delay if persons who appeared on the books of the bank as individual stock-holders were permitted to relieve themselves by proving that they held the stock in a representative capacity." *Davis* v. *Essex Baptist Asso.*, 44 Conn. 582 ; *S. C. Brown's Nat. Bank cases*, 110. But this Court has disposed of this question in the same way in *Magruder* v. *Colston*, 44 Md. 356, thus : " If creditors must look beyond the legal title, as exhibited by the books of the bank they can never know against whom to proceed." Mrs. Urie, as we have seen, was according to the books of the appellant bank, the absolute owner of the stock.

Having concluded that Mrs. Urie is the holder of the stock in question it follows that the plaintiff's prayers were properly refused. The rulings of the Court upon the defendant's prayers and upon the demurrer to his plea are not before us.

*Judgment affirmed.*

(Decided June 22d, 1897).