## CHAPMAN, State Banking Com'r, v. PETTUS et al. (No. 7261.) *

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1925. Rehearing Denied Feb. 11, 1925.)

**1. Husband and wife ⬅98—Married women owning stock in state banks may be held liable for assessment levied against stockholders.**

Under Const. art. 16, § 16, defining liability incidental to ownership of stock in banking corporations, carried forward in Rev. St. art. 552, when joined with article 1123, as amended by Acts 1919, c. 132, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 1123), married women owning stock in state banks may be held liable for assessment authorized to be levied against stockholders of such banks.

**2. Constitutional law ⬅34—Provision defining liability incidental to ownership of stock in banking corporations is self-executing.**

Const. art. 16, § 16, defining liability incidental to ownership of stock in banking corporations is self-executing.

**3. Constitutional law ⬅48—Banking Act should be considered as to uphold its integrity.**

The Banking Act should be so considered as to uphold its integrity.

**4. Banks and banking ⬅47(1)—Real and not apparent owner of bank stock is liable thereunder.**

Generally, real and not apparent owner of bank stock is liable for assessments thereunder.

**5. Banks and banking ⬅47(1)—One holding himself out as owner of shares may be treated as stockholder.**

Any person who holds himself out as owner of shares, by allowing himself to appear as registered owner on books of bank, may be treated as stockholder.

**6. Banks and banking ⬅47(1)—One holding stock for undisclosed principal may be held liable as stockholder.**

One holding bank stock for undisclosed principal may be held liable as stockholder, although he is only agent.

**7. Banks and banking ⬅47(1)—Trustee is liable when stock appears unincumbered in his name.**

While trustee as such is not liable as bank stockholder, when stock appears unincumbered in his name he is liable.

**8. Banks and banking ⬅47(1)—Both cestui que trust and trustee liable as stockholders, where trustee holds stock apparently as owner.**

Where person holds bank stock apparently as owner, but in fact as trustee under secret agreement with real owner, both cestui que trust and trustee are liable as stockholders, and trustee may require adjustment of equities arising in transaction between him and cestui que trust.

**9. Banks and banking ⬅47(1)—Trustee holding stock as owner not liable where creditors have notice of representative capacity.**

Trustee holding bank stock apparently as owner would not be liable thereunder where creditors or others seeking to hold him liable have notice of his representative capacity.

**10. Banks and banking ⬅47(1)—Creditors of insolvent bank held not put on inquiry as to whether wife held stock in trust for husband.**

Creditors of insolvent bank were not put on inquiry by books of bank showing stock was held by married woman as to whether she was holding stock in trust for her husband, since under Const. art. 16, § 16, Rev. St. art. 552, and article 1123, as amended by Acts 1919, c. 132, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 1123), she stood precisely in position of a male, with same rights and liabilities.

**11. Banks and banking ⬅48(2)—Transfer on bank's books held notice only that husband had transferred stock to wife for valuable consideration without reservation.**

If books of bank showing that stock was issued to T. W. P., who assigned it to Mrs. T. W. P., in whose name stock was reissued, imported notice that Mrs. T. W. P. was wife of her assignor, it was notice only that husband had transferred stock to his wife for valuable consideration and without reservation.

**12. Husband and wife ⬅262(1)—Property conveyed from husband to wife presumed to be separate property of wife.**

Conveyance from husband to wife carries with it presumption that property conveyed is to be separate property of wife.

**13. Appeal and error ⬅737—Assignment of error not considered where multifarious.**

Assignment of error that "court erred in overruling special exceptions in" plaintiff's supplemental petition was multifarious, where there were seven special exceptions to such pleading, and hence would not be considered under rule 26.

**14. Banks and banking ⬅47(2)—Commissioner not required before enforcing assessment against stockholder to show that bank was insolvent or unable to pay obligations.**

Commissioner of insurance and banking was not required affirmatively to show, before enforcing assessment against stockholder of insolvent bank, that bank was insolvent or unable to pay its obligations on demand.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by J. L. Chapman, State Banking Commissioner, against Mrs. T. W. Pettus and husband. Judgment for named defendant. Judgment for plaintiff against other defendant, and plaintiff appeals, and other defendant cross-appeals. Reversed and remanded.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused March 11, 1925.

Gaines, Quin, Harley & Gaines, of San Antonio, for appellant.

Nelson Lytle and Marcus W. Davis, both of San Antonio, for appellees.

SMITH, J. In February, 1913, T. W. Pettus purchased 150 shares of the capital stock of the First State Bank & Trust Company of Taylor, Tex., of the total par value of $15,-000, and a certificate thereof was issued by the bank to Pettus. A few weeks later Pettus assigned said certificate to "Mrs. T. W. Pettus," reciting in the written assignment that the same was made "for value received," and authorizing transfer of the stock to be made on the books of the banking corporation. This was done in due course, and the stock was reissued to and in the name of "Mrs. T. W. Pettus." The Pettuses were husband and wife, and are still so; but that fact was not affirmatively shown either on the books of the corporation or in any of the written instruments referred to.

Mrs. Pettus' name remained on the books of the bank as the owner of the stock for more than ten years, and until, in June, 1923, the bank failed and its doors were closed and its affairs taken over by J. L. Chapman, state banking commissioner, in pursuance of familiar provisions of our statutes. Subsequently, the commissioner gave notice to Mrs. Pettus that as a stockholder in the bank she had been assessed an amount equal to the sum of the capital stock appearing in her name on the bank's books, as was also provided by law. When Mrs. Pettus failed to respond to this assessment, the commissioner brought this suit against her for the amount thereof, $15,000, joining T. W. Pettus, pro forma, as a party defendant.

Mrs. Pettus contested the suit, contending that because of her coverture, of which appellant had constructive notice, she could not be held to the statutory liability upon the assessment; and claiming, for the first time, that although the bank's books showed her to be the owner of the stock in question, she was not in fact such owner, and never had been, that T. W. Pettus was the real owner of the stock, which had been transferred to and held by her only as a trustee for him, and solely for his convenience. The trial court found the facts involved in this defense to be true, and as there was evidence to support those findings we adopt them as the findings of this court.

Upon a trial without a jury the court rendered judgment in favor of Mrs. Pettus as against the commissioner, and in favor of the latter against T. W. Pettus for the amount of the assessment, in response to alternative pleadings of the commissioner. The latter alone has appealed, although appellee has presented a cross-assignment of error, which will be noticed later.

[1, 2] The primary question presented by the appeal is the one of whether or not married women owning stock in state banks may be held liable, as all other classes of such stockholders admittedly are, for the assessment authorized by our Constitution and statutes to be levied against such stockholders. There is no constitutional or statutory provision which expressly fixes such liability upon married women. If that liability exists, then, it does so only by necessary implication arising from the general provisions of section 16, art. 16, of the Constitution, and article 552, R. S., when joined to the specific provisions of article 1123, R. S. We have reached the conclusion that the liability exists, and should be enforced. It is provided in the Constitution that the Legislature shall by general laws authorize the incorporation of state banking institutions, "and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof," and that—

"Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred." Section 16, art. 16.

In obedience to the constitutional mandate, the present state banking statutes (articles 370–574) were enacted by the Legislature, and the quoted provision fixing the liability of each stockholder for the debts of the bank was carried forward into those statutes. Article 552. It will be observed that neither in the constitutional provision, nor in the banking acts passed in pursuance thereof, is there any provision expressly subjecting married women to the personal liability fastened upon stockholders for the debts of banking concerns, and for the additional assessments stipulated in the acts. But, as this provision is made to apply to "each shareholder," the implication is very strong that the application was intended to reach every person capable of owning shares of stock in state banking corporations. The constitutional provision is clearly self-executing (Austin v. Campbell [Tex. Civ. App.] 210 S. W. 277), and it does not seem that any Legislature would have the power, in the face thereof, either by omission or by affirmative act, to exempt from its operation any class of persons capable of owning such shares, which, of course, includes married women. Whether this implication may be given effect to overcome the ancient, but still vigorous, rule of strict construction in favor of married women against all enactments affecting their personal liabilities, is a question perhaps unnecessary to decide in this cause. It does not seem to be necessary to look alone to the

quoted provision to determine if married women are amenable to the liability therein provided for in general terms. We think that provision must be linked with the more specific provisions of article 1123, R. S.:

"The charter of an intended corporation must be subscribed by three or more persons; * * * provided, that all charters may be subscribed by married women who may also be stockholders, officers and directors thereof; and their acts, contracts and deeds as such stockholders, officers and directors shall be as binding and effective for all the purposes of said corporation as if they were males; and the joinder and consent of their husbands and privy examinations separate and apart from them shall not be required."

[3] As will be seen, the act by express terms relates to all corporations, and we see no reason why it should not include state banking corporations. If it does, then certainly it settles the very question under consideration, and has the unmistakable effect of placing married women upon precisely the same footing as all other persons owning stock in state banks, both as to the power to own and control and vote such stock, and as to the duty to respond to the liability of such ownership. The Banking Act (Acts 1st Called Sess. 1905, c. 10) ought to be so considered as to uphold its integrity; whereas, to hold that under its terms married women may own stock in banks and enjoy all the profits and privileges and benefits of such ownership, and at the same time be exempt from the burdens and liabilities borne by all other stockholders, would go far towards destroying the wise purposes of the act. The precise question is new in this state, but in other jurisdictions, under statutes and conditions similar to those in this state, married women are held to be equally liable with all other shareholders, and we so hold here. 1 Cook on Corp. §§ 66, 250; 7 C. J. p. 770; Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 493.

It is contended by appellant that Mrs. Pettus is estopped to deny her true ownership of the stock in question, or to assert, after the bank had failed, that she did not own the stock but simply held it in her name as trustee for her husband. Appellee contends, on the other hand, that those interested had actual or constructive notice of her coverture, and that being a married woman, she cannot be estopped by her acts except in case of her fraud, which is not alleged here. As has been shown, the stock was transferred on the books of the corporation from "T. W. Pettus" to "Mrs. T. W. Pettus," and stood thus for 10 years, and up to the time of the failure. There was nothing in the books to show the alleged relation of trustee, or that Mrs. Pettus held the stock in any other capacity than that of absolute owner.

[4] It is true, as appellee contends, that the general rule is that the real, and not the apparent, owner of bank stock is liable thereunder. 7 C. J. 769; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Pauly v. State, etc., Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844; Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723.

[5-7] But that general rule is no more settled than the specific rules that any person who holds himself out jas the owner of shares, by allowing himself to appear as the registered owner on the books of the bank, may be treated as a stockholder; that one holding stock for an undisclosed principal may be held liable as a stockholder, although in fact he is only an agent; that although a trustee, as such, is not liable, yet when stock appears unincumbered in his name, he is liable. 1 Cook on Corp. § 253; 7 C. J. pp. 769, 770, §§ 608, 609; Rankin v. Fidelity Ins. Trust & Safe-Deposit Co., 189 U. S. 242, 23 S. Ct. 553, 47 L. Ed. 792; Finn v. Brown, 142 U. S. 56, 12 S. Ct. 136, 35 L. Ed. 936; Kenyon v. Fowler, 215 U. S. 593, 30 S. Ct. 409, 54 L. Ed. 341; Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 493. As was said in the case last cited:

"The only safe rule on this subject is that, when stock is held in a representative capacity, it should be noted on the stock book of the bank; and, if a person appears there as absolute owner of the stock, he will not generally be permitted to deny it. If he claims to be trustee, and does not disclose it, he is guilty of laches, for which others should not suffer. The settlement of the affairs of an insolvent bank would be rendered a matter of great expense and delay if persons who appeared on the books of the bank as individual stockholders were permitted to relieve themselves by proving that they held the stock in a representative capacity.'"

The theory upon which these holdings are predicated is simple and obvious. The federal statute requires each national bank to keep a list of its stockholders available for the inspection of all persons interested, and the state statute requires that the "books" of state banks be kept open for a like purpose. The courts hold, in effect, that the purpose of these acts is to lay the list of stockholders before the eyes of the bank's creditors, who may by inspection thereof ascertain who are its stockholders, and thus determine for themselves the financial strength of the corporation; wherefore when the bank fails it is too late for the apparently absolute owner of stock to disclaim his ownership. To hold otherwise would serve to defeat the very purposes of the acts cited. Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218; Pauly v. Trust Co., supra; McWhirter v. Bank (Tex. Civ. App.) 182 S. W. 682; Thompson v. Bank (Tex. Civ. App.) 189 S. W. 116. It is impossible to escape the justice of this rule, or the force

of the reasoning on which it is based. We are not unmindful of the case of Brooks v. Austin, 206 S. W. 723, in which this court held, generally, that the real, and not the apparent, owner of bank stock is liable for the bank's debts. But in that case the question of estoppel does not seem to have been raised in the pleadings, or presented or considered on appeal, nor was it discussed in the opinion. Here, the question is squarely presented, and ably argued by counsel for both parties.

[8] We are of the opinion, however, that in cases where a person holds stock apparently as owner but in fact as trustee under a secret agreement with the real owner, as in this case, both the cestui que trust and the trustee are liable, with the right given the latter to require an adjustment of equities arising in the transaction between him and the cestui que trust. Under such rule no injustice may be done any one, for the creditors of the bank will be given an accounting against the very person upon whose responsibility they extended credit, while the trustee is given recourse against the cestui que trust. If the latter is incompetent or insolvent, the trustee may not complain, since he must have known the fact when he concealed his trusteeship and led the creditor to believe that he, and not the insolvent, was the true owner of the stock. We think the authorities warrant this holding, and certainly it seems to be founded upon justice. 1 Cook, Corp. (7th Ed.) §§ 245, 246, 249, 250, 253.

[9] Of course, however, the trustees should not be deemed liable where creditors or others seeking to hold them liable as stockholders have notice of the representative capacity in which the apparent owner is acting, since in such case the object of the statute requiring the books and lists of stockholders to be kept open to inspection would be accomplished, and the reason for the rule of liability against the apparent owner would fail. And this brings us to the question of notice presented by the record here.

[10] The books of the bank showed that the stock in question was first issued to "T. W. Pettus," who assigned it to "Mrs. T. W. Pettus," in which name the stock was reissued. Now, the trial court concluded as a matter of law that these facts, appearing of record in the bank's books, were such as to put "persons of ordinary prudence" upon inquiry as to whether Mr. and Mrs. Pettus were husband and wife, and that this inquiry, if pursued a step further, would have disclosed the fact that Mrs. Pettus was simply holding the stock in trust for her husband, to whom liability would then be shifted. The views we have already expressed require us to overrule this conclusion of the learned trial judge. As the statute expressly authorizes married women to own stock and makes them liable under such owner-

ship "for all the purposes of the corporation as if they were males," the mere fact that the books of a corporation show a certain block of stock to be owned by a married woman is no more significant, and puts upon creditors no greater duty of inquiry, than if the ownership appeared to be in the name of a male. The fact of her coverture meant nothing whatever to the inquirer, since under the law she stood precisely in the position of a male, with precisely the same rights and benefits and under precisely the same burdens and liabilities.

[11, 12] The trial judge's conclusion as to notice perhaps should fail for another reason. The transfer, or assignment, was from "T. W. Pettus" to "Mrs. T. W. Pettus." If the record of this fact imported notice that Mrs. Pettus was the wife of "T. W. Pettus," her assignor of record, then here was notice, simply, that the husband had transferred the stock to his wife, for a valuable consideration and without reservation. From this circumstance the inquirer need go no further, because a conveyance from husband to wife carries with it the presumption that the property thus conveyed was to be the separate property of the wife. The idea is expressed by Judge Speer, in his excellent work on the Law of Marital Rights, that it is indeed not a matter of presumption merely, for the effect of a conveyance from husband to wife is to pass title absolutely, subject only to be questioned as in case of conveyances between strangers; that it is not necessary for the husband to declare the conveyance is to the separate use of the wife, for the instrument could have no other meaning. Speer's Law Mar. Rts. § 117; Story v. Marshall, 24 Tex. 306, 76 Am. Dec. 106; Lewis v. Simon, 72 Tex. 470, 10 S. W. 554; Callahan v. Houston, 78 Tex. 494, 14 S. W. 1027; Hunter v. Hunter (Tex. Civ. App.) 45 S. W. 820.

[13] Appellant's fifth proposition, challenging the sufficiency of the petition of the plaintiff below, will be overruled, as will the assignments of error thereunder. We think the petition stated a cause of action when tested by general demurrer. The second assignment of error, submitted as a proposition, is that "the court erred in overruling and not sustaining the special exceptions contained in" plaintiff's supplemental petition. As there were seven special exceptions to the pleading indicated, the assignment is obviously multifarious, and cannot be considered. Rule 26.

[14] Appellee contends in a cross-assignment of error that the showing by appellant of his authority to enforce collection of the assessment in controversy was insufficient; that the assessment was in the nature of a penalty; that the statutes authorizing the proceeding should be strictly construed and complied with; and that such construction

required appellant, before enforcing the assessment, to show insolvency of the bank, or its inability to pay its obligations on demand, neither of which facts was here affirmatively shown. We overrule this cross-assignment, on authority of Brooks v. Austin, supra; Collier v. Smith (Tex. Civ. App.) 169 S. W. 1108; Austin v. Campbell (Tex. Civ. App.) 210 S. W. 277.

Because of the rulings of the court that Mrs. Pettus' coverture relieved her of liability, and that appellant was put upon inquiry which if properly pursued would have disclosed the true ownership of the stock, the judgment will be reversed and the cause remanded for another trial.