FURR v. CHAPMAN, Com'r of Banking.
(No. 7.)

(Court of Civil Appeals of Texas. Eastland. July 3, 1925. Rehearing Granted and Reformed for Appellee and Appellant's Motion Overruled Oct. 23, 1925.)

1. Banks and banking ⬡�ality47(1)—Illegal issue of stock in insolvent bank held no defense to recovery of assessments for benefit of creditors.

That shares of stock in insolvent bank were illegally issued to defendant *held* no defense in suit by commissioner of banking to recover assessments on such stock for benefit of bank's creditors.

2. Banks and banking ⬡⟨49(8)—Testimony held to show loan to failing bank was advanced on credit of defendant as stockholder and director.

Stockholder's testimony *held* to show that loan to failing bank was advanced on strength of belief defendant was stockholder and director, and hence liable for assessment on his stock for benefit of creditors.

3. Banks and banking ⬡⟨47(1)—Payment of assessments on shares in defunct insolvent bank, merged in bank becoming insolvent, held no defense to recovery of assessments on its shares.

In suit by commissioner of banking against defendant as stockholder in insolvent bank to collect assessments levied on stock for benefit of creditors, in which it appeared such bank before its insolvency purchased assets and liabilities of another insolvent defunct bank, evidence offered by defendant that shares of stock sued on represented shares which he owned in such defunct bank and on which he had paid a full assessment *held* properly excluded as not constituting defense so far as creditors of bank were concerned.

On Motion for Rehearing.

4. Banks and banking ⬡⟨47(1)—Defendant holding shares of stock in insolvent bank in trust for minor son held personally liable for assessments levied on stock.

Defendant holding shares of stock in insolvent bank in trust for his four year old son, over whom it was not shown he was appointed guardian by a court of competent jurisdiction, *held* personally liable for assessments levied on

such stock by the banking commissioner for the benefit of creditors, in view of Rev. St. 1911, art. 556.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by J. L. Chapman, as Commissioner of Banking, against H. B. Furr. From an adverse judgment, defendant appeals, and plaintiff assigns cross-error. Affirmed in part; reversed and rendered in part.

John W. Mackey, of Breckenridge, for appellant.

McCartney, Foster & McGee and Hawkins, Hawkins & David, all of Breckenridge, for appellee.

LITTLER, J. This suit was brought by J. L. Chapman as commissioner of insurance and banking, as plaintiff, against H. B. Furr, as defendant, alleging the due incorporation of the Breckenridge State Bank, its insolvency, and failure thereof on November 12, 1921, and further alleging that H. B. Furr, hereafter called appellant, on and for some time prior to November 12, 1921, was the owner of 81 shares of stock in said bank, of the par value of $100 each, as shown by the books of said bank; that the insurance and banking commissioner had levied an assessment against the stockholders of said bank, including appellant, to the full extent of 100 per cent. of the par value of their respective stock in said bank; that the assessment against appellant amounted to $8,100; that the whole of said amount remained unpaid, although demand had been made upon appellant for the payment of same, wherefore appellee, being in charge of said bank for purposes of liquidation, was entitled to recover from appellant the full amount of said assessment.

Appellant answered by general demurrer and denial, denying that he was ever at any time a stockholder in the Breckenridge State Bank, alleging that in the year 1920 he was the owner of 243 shares of stock in the "Guaranty State Bank," of Breckenridge, Tex., which became insolvent; that the insurance and banking commissioner had levied an assessment against appellant for the full amount of 100 per cent. on the par value of said stock, and appellant had paid same to the amount of $24,300, thereby liquidating all claims against him by reason of his ownership of the 243 shares of stock in the "Guaranty State Bank"; that thereafter said commissioner sold and delivered all of the assets, including the liabilities of the stockholders of the "Guaranty State Bank," to the "Breckenridge State Bank," which said bank assumed the payment of all liabilities of the defunct "Guaranty State Bank"; that by the said transaction all of the assets of the "Guaranty State Bank" were merged into and combined with, and all of its liabilities added

to, those of the "Breckenridge State Bank"; that, after said sale and transfer had been consummated, said "Breckenridge State Bank" attempted to double its capital stock; that said purported increase was illegal and void.

Appellant alleges that the requirements of our statutes were not complied with; that such increase of stock was not in good faith subscribed, nor any part of same paid for, as required by law, but was only issued for the purpose of being portioned out gratis to those who had owned stock in the defunct "Guaranty State Bank"; that the "Breckenridge State Bank" was insolvent and defunct at the time of such purported increase of stock by reason of its having assumed the liabilities of the defunct "Guaranty State Bank," and was defunct at the time it issued the 81 shares of stock to appellant.

Appellant further alleges that the said 81 shares of stock were issued to him without his knowledge or consent; that he never subscribed for said stock, never paid or agreed to pay anything of value for said stock; that he only accepted said stock on account of the representations made to him by one Baker, who was then in charge of said bank, that if he, appellant, would accept the 81 shares of stock and qualify as a director of the bank, everything would be all right with the bank, which said representations were not true, as the bank was at that time insolvent, but appellant, relying upon the statement of Baker, did accept the stock and qualify as director, but that he was never a legal stockholder or director of said bank.

Appellant further alleges that, if the 81 shares of stock were in fact issued to him, they were issued in lieu of the 243 shares which he had held in the defunct "Guaranty State Bank," and upon which he had heretofore paid the full assessment of 100 per cent.; hence the levy now made by appellee, if collected, would amount to a double assessment against the same stock, which is not authorized by law.

Appellee replied with a supplemental petition consisting of general demurrer, special exceptions, and general and special denials, and pleading limitation and estoppel.

The case was called for trial before a jury, and the court, after sustaining the exceptions of appellee to the answer of appellant, gave a peremptory instruction to the jury to return a verdict for the plaintiff for $6,540, covering the assessment on 61 shares of stock; it having been shown that appellant held 20 shares only as trustee, and therefore was not liable on the said 20 shares.

Upon trial, appellant offered to testify in substance as follows:

"That on or about July 15, 1921, he paid to the Commissioner of Banking the sum of $24,300 in settlement of assessment against him as a stockholder in the defunct "Guaranty State Bank" of Breckenridge; that, after said as-

sessment had been paid, all of the assets and property of the "Guaranty State Bank" were sold by the banking commissioner to the "Breckenridge State Bank"; that appellant was not in the town of Breckenridge from shortly after he paid said assessment until about the 1st of October, A. D. 1921.

"I never did own, and had never subscribed for, any stock in the Breckenridge State Bank, but I had learned that I would receive 81 shares representing what stock I had in the Guaranty State Bank, after it had been reduced, I suppose. I never did know anything about how it was reduced. They issued me 81 shares, and told me that represented the stock I had in the original Guaranty State Bank; the 81 shares being one-third of the stock I had owned in the Guaranty State Bank.

"When I returned from Colorado in the latter part of the summer of 1921 I found Mr. John W. Baker in charge of the Breckenridge State Bank as active vice president, and signed my stock as such. I returned from Colorado a short time prior to November 12, 1921, and went into the bank, or was called in, I don't recall now which, but Mr. Baker, who had charge of the bank, said that the bank did not have a quorum of qualified directors; that it was necessary, in order that the business of the bank could be transacted, we should have a meeting of the board of directors; and that, if I did qualify, it would constitute a quorum; that it was very important to have a meeting because of the fact that there were matters of very much importance to the bank and its wellbeing that the directors meet. I told Mr. Baker I did not want to be a director, did not own any stock, and could not act as a director, and he said that I would have to take my stock in order to be a director, and that it was very important. I told him I did not want any stock. I had had an opportunity from the beginning to have stock and qualify as a director, but I declined to do so; but he urged me, insisted on it, and I want to say now that I am sure he was perfectly sincere, and I know that Mr. Baker was honest about it.

"It seemed they had not had a meeting of the directors or a quorum since the bank had changed hands, or since it had been under the management of the Breckenridge State Bank, and Mr. Baker informed me that, if I would qualify, there would be a quorum, and it was absolutely necessary in order that the bank might proceed and continue in business. I still declined to accept it. I did not want to be a director; and I did not want any stock. I had practically lost everything I had in the former bank, and did not want to get tangled up in another, and knew nothing about the management of banks, but Mr. Baker so urgently insisted on me that I finally consented to accept the stock and qualify as a director, which I did on November 7, 1921. There still was not a quorum of qualified directors, but Mr. Baker called a few members, stockholders, and arranged for a committee to go to Austin for a conference with Mr. Hall about the condition of the bank, and I was placed in charge of that committee, you might say, because he gave me a message to give to Mr. Hall, and I think we went to Austin on November 9, 1921. Mr. Baker instructed me to tell Mr. Hall that, unless he would wire $150,000 to the corresponding bank at Fort Worth by 10 o'clock

the next day, this bank would have to close its doors, and that was the first I knew of the condition of the bank. I delivered the message to Mr. Hall, and he declined to furnish the money, saying that he did not have the power. I then told Mr. Hall that I was through with the institution; I washed my hands of it; I refused to have anything further to do with it.

"After Mr. Hall declined to help us, I wired Mr. Kirby at Houston, and told him the predicament we were in, and asked if it would be possible for him to wire some money for deposit to our credit, and he wired $30,000 or $35,000, and Mr. Baker had some collections while we were away, and kept the bank open two or three days longer than he would otherwise. It would have been closed when I came back, except for my efforts down there.

"I never attended a meeting of the board of directors of the Breckenridge State Bank prior to November 7, 1921, and I never received notice of any proposal to have a meeting to consider the matter of increasing capital stock of said bank."

The appellant then introduced in evidence the minute book of the Breckenridge State Bank containing all of the recorded proceedings of both the stockholders and directors of said bank from and after the date of the changing of name from "Breckenridge State Bank & Trust Company" to the "Breckenridge State Bank"; also the minutes of the meeting of the board of directors of the Breckenridge State Bank of May 16, 1921, in which is fully set out the contract entered into between said bank and the banking commissioner, providing for the sale of all the assets of the "Guaranty State Bank" to the "Breckenridge State Bank," and by and through which the said sale was fully consummated, said contract being signed by Ed Hall, commissioner of insurance and banking of the state of Texas, and the Breckenridge State Bank of Breckenridge, Tex., by G. C. Bachman, President—said testimony being offered in support of paragraphs 3, 4, 5, 6, and 8 of appellant's answer to appellee's petition. All of this testimony, upon objection by plaintiff, was by the court excluded from consideration by the jury, whereupon the court then and there peremptorily instructed the jury to return a verdict in favor of the plaintiff for the sum of $6,450, and the action of the court in this respect is assigned as error.

Appellant in his motion for a new trial sets out twelve assignments of error, upon which are based nine propositions predicating his appeal. Proposition No. 1 is based upon alleged error of the court in sustaining plaintiff's demurrers to paragraphs 3, 4, 5, 6, and 8 of defendant's original answer, wherein defendants sought to prove that the preliminary requirements with reference to increase of capital stock by the bank were not complied with; that there was no consideration paid or agreed to be paid for such increase of stock. Third, that said bank did not have a sufficient number of qualified directors re-

quired by law for the transaction of business; hence the issue of stock was illegal and wholly null and void, and appellant could not have been bound as a stockholder by the simple delivery of certificates to him.

Proposition No. 5 is based upon the error of the court in withdrawing from the jury evidence of appellant attempting to show that the 81 shares of stock issued to him by the Breckenridge State Bank were, as a matter of fact, issued in lieu of and a part of the original 243 shares which appellant owned in the Guaranty State Bank, and upon which he had paid an assessment of 100 per cent.

[1] If this was a suit between appellant and the bank, brought for the purpose of having the 81 shares of stock canceled, then the appellant would, under the decisions of our courts, have had a right to have proven the allegations set out in his answer, or, in any action brought against him by the bank, he could have introduced evidence showing the illegality of the issues of stock, if any existed, and it would have been error for the court to have excluded same.

However, in the instant case, the bank is not a party, the suit having been brought by the commissioner, who represents the creditors of the bank, and sues for their benefit, and he not only had the authority so to do, but it was his duty so to do, after first determining that an assessment against the stockholders was necessary to pay the debts of the defunct bank, and, when said assessment was made, the debt of each stockholder became due and payable and no notice of the assessment to the stockholders was necessary. Austin v. Campbell (Tex. Civ. App.) 210 S. W. 280.

Appellant seeks to apply the same test and rules of evidence in this case brought by the commissioner for the benefit of the creditors of the bank as he would in a case brought by him to cancel the stock on account of fraud or the lack of authority of the bank to issue said stock. The trouble with this position is that the creditors represented by the commissioner were not parties to any acts of fraud, deceit, or illegal acts entered into by the officials of the bank in issuing said stock, if any such acts existed, and therefore such defenses as pleaded by appellant are not and could not be good as against them; hence it could not have been error in excluding testimony which could not even tend to show a defense to the action brought by the commissioner for the benefit of creditors. Suppose we concede that said stock was illegally issued and absolutely void in the hands of appellant, yet as to creditors who are presumed to have dealt with the bank on the faith of the credit of appellant the stock would be good for the purpose of an assessment made by the commissioner for the benefit of creditors.

[2] Appellant complains of the action of the court in not permitting him to testify that he had only acted as a director for five days,

and had only been a stockholder for the same length of time, for the purpose of showing that no creditor of the bank had extended credit on account of his being a stockholder and director. However, it is revealed by the appellant's own testimony that, after the commissioner had refused to place $150,000 to the credit of the bank, he (appellant) wired one Kirby for assistance, and that Kirby did wire $30,000 or $35,000 to be placed to the credit of the bank, and, if it had not been for the efforts of appellant, the bank would have closed its doors a day or two earlier. Hence it must have been upon the faith of his credit that the money was received from Kirby and the bank continued to do business for a few days longer. Hence his stock must be held to be good for the purpose of an assessment for the benefit of creditors. Chapman v. Beeman (Tex. Civ. App.) 265 S. W. 244; Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 270.

[3] Appellant complains of the action of the court in not permitting testimony to be introduced tending to show that the 81 shares of stock sued upon represented the same 243 shares which appellant had owned in the defunct Guaranty State Bank and upon which he had paid a full assessment of 100 per cent. If.this was a suit between appellant and the bank, this perhaps would be a serious question in this contention, but, being a suit brought against appellant by the commissioner acting for and in behalf of the creditors of the bank, we hold that the court did not err in excluding said evidence, and further that, for all intents and purposes of this suit, appellant was the owner of 61 shares, the other 20 shares being in his name only as trustee, of stock in the Breckenridge State Bank, and as such owner was liable for the full assessment made by the commissioner on said 61 shares. Houston Nat. Exchange Bank v. Chapman (Tex. Civ. App.) 263 S. W. 929, and cases cited thereunder.

We have given careful consideration to each assignment of error, and have arrived at the conclusion that the record discloses no reversible error committed by the trial court; hence the judgment rendered is in all things affirmed.

### On Motion for Rehearing.

Both appellant and appellee have filed motions for rehearing, which will be discussed in the order named.

Appellant strenuously insists that this court erred in its holding that because, "in this case the creditors represented by the commissioner were not parties to any acts of fraud, deceit, or illegal acts entered into by the officials of the bank in issuing said stock, if any such acts existed, * * * therefore under the facts in this case such defenses as pleaded by appellant are not and could not be good as against them." This question was fully discussed in our original opinion, and we now hold that the exception is not well taken. We also overrule exceptions 3 and 4 in appellant's motion for new trial.

Appellant's fifth assignment of error reads as follows:

"The Court of Civil Appeals erred in its holding that because it is revealed by the appellant's own testimony that, after the commissioner had refused to place $150,000 to the credit of the bank, he (appellant) wired one Kirby for assistance, and that Kirby did wire $30,000 or $35,000 to be placed to the credit of the bank, and, if it had not been for the efforts of appellant, the bank would have closed its doors a day or two earlier, hence it must have been upon the faith of his credit that the money was received from Kirby, and the bank continued to do business for a few days longer, hence his stock must be held to be good for the purpose of an assessment for the benefit of creditors."

This question was fully discussed in our original opinion. However, we will now state that the undisputed testimony of appellant himself was to the effect that he, as a stockholder and director, went to Austin, Tex., for the purpose of discussing the condition of the bank with the banking commissioner and trying to secure from the banking commissioner a deposit of $150,000 to be used for assisting the bank in its embarrassed condition. But, after having conversation with the banking commissioner wherein the commissioner refused to furnish the $150,000 or any other sum, the appellant then upon his own motion wired one John H. Kirby, advising him of the failing condition of the bank, and asking a credit of from $30,000 to $35,000, which credit was furnished by the said Kirby at the special request of the appellant. Under the above facts sworn to by appellant we are unable to see how there can be any controversy over the fact that the bank did receive credit of the said Kirby on account of the appellant applying to said Kirby for credit; he (the appellant) being at the time not only a stockholder, but a director in charge of the affairs of the bank. Hence we conclude that there is no merit in his exception No. 5.

Exceptions 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 present matters that were fully discussed in our original opinion.

Appellant having presented no new authorities in his motion for rehearing, and all facts being fully discussed in our original opinion, and the laws cited in support of our conclusions therein, the motion for rehearing of appellant is in all things refused.

[4] Appellee has filed a motion for rehearing, based on the action of the court in not passing upon appellee's cross-assignment of error. Said cross-assignment of error is as follows:

"The court erred in overruling plaintiff's exception to paragraph 7 of defendant's origi-

nal answer and in admitting the evidence of the witness H. B. Furr in support of the allegation contained in said paragraph 7 and in instructing a verdict against plaintiff on that part of his cause of action resting upon the stock ownership of 20 shares in the name of H. B. Furr, trustee, for the reason that the court thereby permitted defendant to prove an undisclosed trusteeship as a defense to the assessment made against him, and then by the instructed verdict enforced such defense, all of which fully appears from plaintiff's bill of exception No. 1."

Appellant testified upon the trial of the case that he was indebted to his minor son in the sum of $4,000, and, in order to reimburse his said son, he purchased $2,000 worth of stock, and held same in his own name as trustee for the use and benefit of his minor son.

No one will seriously contend but what each share of stock in the defunct bank was subject to assessment by the banking commissioner, and that some one was liable for the payment of said assessment; hence it would appear that the only question now for this court to decide is who is liable for the assessment on the $2,000 worth of stock held by appellant as trustee, and it necessarily follows that either appellant or his four year old son is liable for said assessment.

There is nothing in the record even indicating that appellant had ever been appointed by a court of competent jurisdiction as guardian of said minor; hence the appellant himself could not legally have purchased said stock for said minor in repayment of money owing to said minor.

No one will seriously contend that a four year old boy could agree or could in any manner make a binding contract by which he would be bound as the purchaser of said stock to pay an assessment thereon, and, if he could not have agreed to the purchase of said stock, he certainly could not be liable; hence there is only one conclusion for this court to arrive at, which is to hold that appellant is personally liable for the assessment made by the commissioner of banking, not only upon the $6,100 of stock held in his own name, but upon the $2,000 worth of stock held in his name as trustee, although he claimed it was for the benefit of his minor son.

Authorities: Article 556, Revised Civil Statutes, 1911; Connally v. Lyons et al, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935; Head v. Porter et al. (Tex. Civ. App.) 240 S. W. 685; Hubbell v. Houghton (C. C.) 86 F. 547; Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 270.

In the case of Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 493, the Supreme Court of Maryland was considering the effect of the national bank act, which is substantially identical with our article 556, Revised Statutes 1911. A father had purchased 10 shares of stock in a national bank for the benefit of his infant daughter, who was four years old, and had transferred them to his wife, who likewise held them in trust for the daughter, and the court said:

"The appellant, however, contended that admitting that Mrs. Urie was authorized to hold the stock beneficially she did not so hold it, but in fact held it as attorney, agent, trustee or in some representative capacity. But it is clear from the evidence that she either holds as self-appointed attorney or trustee for an infant of tender years; for an undisclosed principal, as appears by the certificate, or personally and beneficially, as appears by the stub of the stock book of the bank. In neither event do we think she can evade the personal liability of a stockholder. If persons were allowed to subscribe for stock in a national bank or in any other corporation where a personal liability attaches either as attorney for an unnamed principal, as self-appointed trustee for some unnamed cestui que trust or as attorney for an unnamed infant of tender years, and when called upon to pay the debts of the bank to the extent of the stock so subscribed, could escape by simply declaring that they represented in some capacity those who are legally or otherwise incapacitated, the law would be a dead letter, and the creditors of these associations which are found in great numbers in every state would be deprived of the only certain means provided by law for the payment of their claims."

Therefore we conclude that we erred in our original opinion in so far as we failed to pass upon the cross-assignment of error filed by appellee, and we now refuse motion for rehearing as to appellant, and grant said motion as to appellee, and affirm the judgment of the district court in so far as it gives judgment against the appellant for $6,100, and reverse said judgment as to the $2,000 worth of stock held by appellant as trustee, and here render judgment against the appellant for said $2,000, or to the full value of the 81 shares of stock upon which the commissioner levied said assessment.