No. 13,105.

SWENSON *v.* MCFERSON, BANK COMMISSIONER.
(17 P. [2d] 530)

Decided November 7, 1932. Rehearing denied December 29, 1932.

Mr. LOUIS VOGT, Mr. J. A. MARSH, for plaintiff in error.

Mr. CHARLES M. ROSE, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties are hereinafter referred to as Mrs. Swenson and the commissioner, respectively.

The question before us is, Was Mrs. Swenson a stockholder in the Stock Growers State Bank of Burlington, hereinafter called the bank, at the time it was closed?

The bank is in process of liquidation as insolvent. The liability of its stockholders is fixed by statute at twice the par value of their shares. That value was $100. On the theory that Mrs. Swenson owned five shares, judgment was entered against her for $1,000. To review that judgment she prosecutes this writ and asks that it be made a supersedeas.

Mrs. Swenson was an administratrix of the estate of her deceased husband. That estate owned ten of said shares. At a stockholders' meeting January 13, 1931, she was proposed for election as a director. Her eligibility was questioned on the ground that she was not personally a stockholder. The president assured those present that he would "take care of that." On that assurance she was elected and served until the institu-

tion was closed. During this period of approximately nine months she continued to act as a director, attended ten meetings of the board, and in each instance signed the minutes in her official capacity. The president kept his promise to "take care of that" on April 14, 1931, by assigning Mrs. Swenson five shares of his own stock. At that time Mrs. Swenson assigned the certificate in blank and it was taken and kept thereafter by the president. However, she receipted for the certificate on the stub, which reads: "Certificate No. 58, five shares, issued to Helen M. Swenson, dated April 14th 1931. From whom transferred, Warren Samburg [said president], dated April 28th, 1924, original certificate No. 48 for ten shares; number of shares transferred five; received certificate No. 58 for five shares this 14th day of April, 1931; [signed] Helen M. Swenson."

The bank kept a stock ledger. The foregoing transfer does not appear therein. The ledger was not "posted" between April 14th and the date of the closing of the bank. Had it been this transaction would have so appeared.

The statute, section 2664, p. 864, C. L. 1921, provides that "Every director shall own not less than five shares in any bank with a capital stock of $30,000 or less [which was this bank], * * * and said stock shall be in nowise pledged or incumbered." Each director is required to take an oath "that he is the owner in good faith of at least that part of the capital stock of said bank" above provided. C. L. 1921, p. 865, §2666. Said oath must be filed in the office of the commissioner. C. L. 1921, p. 863, §2660.

The five directors elected at the annual meeting of January 13, 1931, took and subscribed a joint oath, which recites: "That we are the owners in good faith of at least that part of the capital stock of said bank required by law, unpledged and unincumbered." There is nothing in the records before us to indicate that Mrs. Swenson ever acted in a representative capacity, with relation to the

affairs of the bank, unless it be in the minutes of the stockholders' meeting of January 13, 1931, where, in specifying the stock present and voting, we find this entry, "Helen M. Swenson administratrix 10 shares."

It is here asserted by Mrs. Swenson that she was entitled in law to act as a director in her representative capacity; that thereby no personal liability attached to her; that she was misled into the transaction by which the president transferred to her five shares of stock and obtained her receipt therefor; that in fact she was not personally the owner of any. We assume, without deciding, the correctness of these contentions.

No dispute is here presented between Mrs. Swenson and the bank, or the other stockholders, or her creditors, hence we do not notice authorities cited which relate to such controversies. This dispute is between the commissioner, who represents the creditors of the defunct bank, and an alleged stockholder therein, and relates to the latter's statutory liability as such. *Bundy v. Wilson,* 66 Colo. 253, 180 Pac. 740.

■ At one point in her testimony the trial court refused to permit Mrs. Swenson to deny that she personally owned the stock in question. Much is made of that ruling here, but it is immaterial. At other places the witness denied such ownership and was permitted by the court to state in detail all the facts from which it could be determined. The conclusion was one of law for the court.

■ In suits against a partnership, a silent partner can be held, not because the creditor dealt on the faith of his interest, but because it is his business. On the same principle, in similar suits against stockholders in a corporation, an actual stockholder can be held though his ownership was unknown. Again, one who lends his name to a partnership in which he has no interest can be held, not because it is his business, but because, by his own act, he has led others to believe that it is, and to deal with it on the faith of his credit, and as against them he will not

be heard to deny it. So one not a stockholder, but representing himself as such, will be held. This is the principle underlying the statutes and in the light of which they must be interpreted. If A holds no stock in a banking corporation, in any capacity, but is nevertheless elected a member of the board of directors, files his oath as such and accepts the office of president, it requires neither argument nor citation of authority to demonstrate that he will not, on the failure of the bank, be permitted to wash his hands of the entire transaction, by showing the facts, and retire unscathed from the scene.

■■ From the foregoing it will be observed that the sole remaining question is, Was the oath of Mrs. Swenson that of a director acting in a representative capacity?

We must presume that not only the stockholders and directors of this bank, but the depositors as well, knew the law. Those depositors knew that Mrs. Swenson was acting as a director and holding herself out as such; that this required the ownership in good faith of at least five shares of capital stock, unpledged and unincumbered. One of the purposes of the law is that only one substantially interested should be entrusted with the control of the business of a bank. Another is that a director should be able to respond in something more than a nominal amount in case of failure of the business, for which failure he was, in part, in law, responsible. Furthermore, it might be as important to a depositor to know whether a director acted in a personal or representative capacity as to know that he was the owner of a given amount of unincumbered and unpledged stock. For instance, the estate represented by Mrs. Swenson might have been notoriously bankrupt and her financial responsibility notoriously of the best, or vice versa. How was the depositor to ascertain this fact? Not from the stock ledger, because it disclosed nothing (even had the unposted transfer of the five shares been posted, she would not have been benefited). If from the stockbook, its only story was that of personal ownership. If from the di-

rector's oath, it did not intimate a lack of personal responsibility and every inference from it was to the contrary. She took the identical oath taken by the directors who held stock in their individual capacity. Its recital that the stock was unpledged and unincumbered suggested personal ownership. Moreover, the law is well settled that when, in such cases, representative capacity is relied upon, that capacity must be disclosed. 3 R. C. L., p. 403, §31; Morse on Banks and Banking, Vol. 2, p. 1412, §679; Michie, Banks and Banking (1931 Ed.), Vol. 2, p. 129, c. 5, §46; *Kerr v. Urie,* 86 Md. 72, 37 Atl. 789, 63 A. S. R. 493, 38 L. R. A. 119; *Porter v. State,* 122 Okla. 226, 253 Pac. 985. In the instant case it was not disclosed. Mrs. Swenson and all other stockholders clearly concluded that personal ownership was essential to official election and acted accordingly. The records were written to indicate personal ownership; the appearance thereof was intentionally maintained, her oath gave no hint to the contrary, and no depositor, in search of the truth, could have found from those records a suggestion of representative capacity.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.